UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
LARRY POUNCY,

                                                                06 Cv. 4777 (RPP)


                                     Plaintiff,


                        -against -

                                                                **OPINION & ORDER**

DANKA OFFICE IMAGING,

                                     Defendant.
-------------------------------------------------------X
**ROBERT P. PATTERSON, JR., U.S.D.J.**

        Plaintiff Larry Pouncy ("Plaintiff" or "Pouncy") was hired by Defendant Danka

Office Imaging ("Danka" or "Defendant") as a Senior Sales Representative ("SSR"), an

entry-level sales position, in December 1999.  Danka is a distributor of office imaging

equipment (photocopy and fax machines, multi-function devices and related software,

services and supplies).  On July 1, 2001, Plaintiff was promoted to the position of Named

Account Executive ("NAE"), and on December 20, 2004, approximately six months after

Plaintiff filed a complaint of discrimination with the EEOC, Defendant terminated

Plaintiff's employment.  Plaintiff filed suit in this Court on May 12, 2006, and in a

September 27, 2007 amended Complaint, Plaintiff alleged racial discrimination in

violation of Title VII of the Civil Rights Act, 42 U.S.C. §2000e et seq. ("Title VII"), the

Civil Rights Act of 1972, 42 U.S.C. §1981 ("Section 1981"), and New York City

Administrative Code §8-107 ("New York City Human Rights Law" or "NYCHRL"), as

well as retaliation under Title VII and the NYCHRL.

        At the close of discovery, Defendant moved for summary judgment, asking this

Court to dismiss all of Plaintiff's claims.  Oral argument on the motion was held on

1

March 25, 2009.  For the reasons stated below, Defendant's motion is GRANTED in part and DENIED denied in part.  The parties are ordered to appear before this Court for trial on July 20, 2009 at 9:00 a.m.   A joint pre-trial order, voir dire requests, requests to charge, *in limine* motions, and proposed jury instructions are to be filed by July 2, 2009.

## 1. Overview

Plaintiff alleges that Defendant's allocation of accounts and territories to him during the course of his employment (2001 to 2004) was discriminatory, and further, that the number and size of accounts and territories that were assigned to him were reduced over the course of his employment in retaliation for his internal complaints to Danka management concerning this discrimination.  Plaintiff also contends that his termination by Danka in December 2004 was discriminatory, and that this termination was in retaliation for his discrimination complaint to the EEOC.[1]

Defendant has moved for summary judgment on the grounds that most of Plaintiff's discrimination claims are statutorily time-barred, and further, that Plaintiff's claims under the NYCHRL are jurisdictionally defective.  In the alternative, Defendant argues that Plaintiff cannot establish valid claims of race discrimination and retaliation

---

[1] In addition to the above-mentioned claims, Plaintiff also alleged in his complaint that he was subject to discrimination and retaliation with regard to: 1) his hiring in December 1999 at an allegedly lower rate of pay and level than comparably-skilled white people; 2) his receipt of a lower salary than similarly-situated white NAEs when he was promoted to a NAE position in July 2001, and; 3) his receipt of a lower base salary and less sales support than similarly-situated white NAEs during Plaintiff's employment as an NAE from 2001 to 2004.  Plaintiff has not, however, argued the merits of these claims in its brief in opposition to summary judgment.   Accordingly, these particular stand-alone claims are abandoned and need not be considered by this Court.  See, e.g., Milardo v. Middletown, 2009 U.S. Dist. LEXIS 24844 (D. Conn. 2009) ("Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the [claim] in any way"); see also Moody v. Morris, 2009 U.S. Dist. LEXIS 33152, *17 n.2 (S.D.N.Y. 2009) (claims not argued in parties briefs are deemed abandoned); Spanierman v. Hughes, 576 F. Supp. 2d 292, 299 n. 1 (D. Conn. 2008) (claims not discussed in summary judgment briefs are abandoned); Spinelli v. New York, 2007 U.S. Dist. LEXIS 19745, *16 (S.D.N.Y. 2007) (same); Bronx Chrysler Plymouth v. Chrysler Corp., 212 F. Supp. 2d 233, 249 (S.D.N.Y. 2002) (dismissing claim as abandoned because party opposing summary judgment "made no argument in support of th[e] claim at all" in its summary judgment opposition papers).

because his allegations "are devoid of any competent evidentiary support" sufficient to "oppose and defeat a motion for summary judgment."  Defendant asks for the dismissal of Plaintiff's complaint in its entirety.

A.  Standard for Summary Judgment

Summary judgment is appropriate only when the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Guilbert v. Gardner, 480 F.3d 140, 145 (2d Cir. 2007).  "[S]ubstantive law will identify which facts are material," Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986), and an issue of "material fact is 'genuine' … if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.; Mitchell v. Shane, 350 F.3d 39, 47 (2d Cir. 2003). All ambiguities must be resolved, and all inferences drawn, in favor of the non-moving party. Slattery v. Swiss Reinsurance Am. Corp., 248 F.3d 87, 91 (2d Cir. 2001).

However, a "non-moving party cannot avoid summary judgment simply by asserting a metaphysical doubt as to the material facts." Woodman v. WWOR-TV, 411 F.3d 69, 75 (2d Cir. 2005).  A non-moving party "may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that [his] version of the events is not wholly fanciful." Id.  Thus, a non-moving party "must 'set forth specific facts showing that there is a genuine issue for trial.'" Id.

In employment discrimination cases such as this, summary judgment is "ordinarily inappropriate" where the employer's intent and state of mind are in dispute. Carlton v. Mystic Transp., Inc., 202 F.3d 129, 134 (2d Cir. 2000); see Gallo v. Prudential

Residential Services, Ltd. Partnership, 22 F.3d 1219, 1224 (2d Cir. 1994).  Additionally, in discrimination cases summary judgment may not be granted merely because the court believes that the plaintiff will be unable to meet his or her burden of persuasion at trial. There must either be a lack of evidence in support of the plaintiff's position, or the evidence must be so overwhelmingly tilted in one direction that any contrary finding would constitute clear error.  Danzer v. Norden Sys., Inc., 151 F.3d 50, 54 (2d Cir. 1998); Weber v. Parfums Givenchy, Inc., 49 F.Supp.2d 343, 354 (S.D.N.Y. 1999).

And in all cases, but in employment discrimination cases particularly, "nonmovants' affidavits alone can[ ] -- as a matter of law -- suffice to defend against a motion for summary judgment."  Danzer, 151 F.3d at 57; see also Davis v. New York, 316 F.3d 93, 100 (2d Cir. 2002).  However, "even in the discrimination context … a plaintiff must provide more than conclusory allegations to resist a motion for summary judgment."  Holcomb v. Iona College, 521 F.3d 130, 137 (2d Cir. 2008); Bickerstaff v. Vassar College, 196 F.3d 435, 451-2 (2d Cir. 1999) (disregarding plaintiff's Rule 56(e) affidavit because it lacked "concrete particulars"); Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir. 1985) ("To allow a party to defeat a motion for summary judgment by offering purely conclusory allegations of discrimination, absent any concrete particulars, would necessitate a trial in all Title VII cases"); see also Fisher v. Vassar College, 70 F.3d 1420, 1439 (2d Cir. 1995) (Plaintiff's "sense of being discriminated against" is not evidence).

   B.  Statute of Limitations

Defendant contends that many of Plaintiff's claims -- under both the federal (Title VII and Section 1981) and New York City (NYCHRL) statutes -- are time-barred. Defendant's arguments are rejected.[2]

Under Title VII, individuals claiming discrimination or retaliation must file a discrimination charge with the EEOC within 300 days of the date of the alleged incident or retaliation.  See 42 U.S.C. §2000e-5(e); Elmenayer v. ABF Freight Sys., Inc., 318 F.3d 130, 133-4 (2d Cir. 2003); Gomes v. Avco Corp., 964 F.2d 1330 (2d Cir. 1992).  Plaintiff filed his charge of discrimination with the EEOC (duly-filed with the New York State Human Rights Commission) on June 21, 2004.  (Mokotoff Aff., Ex. 31[EEOC Charge].) Accordingly, allegations of discrimination or retaliation prior to August 2003 are generally time-barred under Title VII.   NYCHRL claims have a three-year statute of limitations, but the statute of limitations is tolled by Plaintiff's filing of his EEOC complaint on June 21, 2004.  See N.Y. City Admin. Code. §8-502(d); Siddiqi v. New York City Health & Hosps., 572 F. Supp. 2d 353 (S.D.N.Y. Aug. 12, 2008).[3]

---

[2] The facts that form this opinion are drawn from the parties' Rule 56.1 Statements of Undisputed Material Facts ("Def. 56.1" or "Pl. 56.1").  Defendant's 56.1 is supported by: the declaration of Jeffrey D. Mokotoff, Esq., dated October 2, 2008 ("Mokotoff Decl.") and accompanying exhibits ("Mokotoff Decl., Ex."), which includes the deposition of Larry Pouncy ("Pouncy Tr."), dated May 28 and July 9, 2008, and the deposition of Rick Pirrotta ("Pirrotta Tr."), dated May 29, 2008; the declaration of Richard Pirrotta, dated October 3, 2008 ("Pirrotta Decl.") and accompanying exhibits ("Pirrotta Decl., Ex."), and; the Declaration of Lance Redler, dated October 2, 2008 ("Redler Decl.") and accompanying exhibits ("Redler Decl., Ex."). Plaintiff's 56.1 is supported by: the Declaration of Jason L. Solotaroff, Esq., dated December 3, 2008 ("Solotaroff Decl.") and accompanying exhibits ("Solotaroff Aff., Ex."), which includes the deposition of Larry Pouncy ("Pouncy Tr."), dated May 28 and July 9, 2008, and the deposition of Rick Pirrotta ("Pirrotta Tr."), dated May 29, 2008, and; the affirmation of Larry Pouncy, dated December 3, 2008 ("Pouncy Aff."). On October 3, 2008 Defendant filed a memorandum of law in support of its motion for summary judgment ("Def. Br."), and on December 3, 2008 Plaintiff filed a response ("Pl. Br.").  Defendant's reply brief was filed on January 6, 2009 ("Def. Rep. Br.").

[3] Defendant argues that because Plaintiff did not file a charge with the NYCHR, and did not provide evidence that his dual-filed charge with the EEOC and NYSDHR was filed, transmitted or referred to the NYCHR, he cannot avail himself of the three-year statute of limitations tolling provisions for his NYCHRL claims.  See New York City Admin. Code §8-502(d) ("Section 8-502(d)").  This argument is rejected because the language of  Section 8-502(d) plainly states: "Upon the filing of a complaint with the city commission on human rights or the state division of human rights and during the pendency of such

Accordingly, any allegations of discrimination or retaliation prior to August 21, 2001 (three-year statute of limitations, but excluding 59 days between when the right to sue letter was issued by the EEOC on March 14, 2006 and when Plaintiff filed his complaint) are time-barred under NYCHRL.  (Mokotoff Aff., Ex. 46 [Right to sue letter].)  Finally, a four-year statute of limitation applies to most Section 1981 claims.  <u>Jones v. R.R. Donnelley & Sons Co.</u>, 541 U.S. 369 (2004).  This lawsuit was filed on May 12, 2006. Accordingly, incidents of discrimination under 42 Section 1981 occurring prior to May 12, 2002 are time-barred.

As noted, Plaintiff alleges that Defendant's allocation of accounts and territories to him from time to time during the course of his employment was discriminatory, and further, that his assigned accounts and territories were reduced over the course of his employment in retaliation for his internal complaints to Danka management concerning this discrimination.   Specifically, Plaintiff takes issue with: 1) Defendant's January 2001 assignments of the Health Plus and SUNY Downstate accounts, which were located within Plaintiff's assigned geographic territory, to two white NAEs, Dennis Launer and Arthur Sperber, respectively; 2) Defendant's removal of half of Plaintiff's Brooklyn territory from his account pool in March/April 2002; 3) Defendant's April 2002 reassignment of Dick Launer's non-pay-for-print accounts to white NAEs, but not to Plaintiff; 4) Defendant's halving of the commission he earned from his July 2002 sale of equipment to the Premiere Home Healthcare account; 5) Defendant's December 2003 assignment to Plaintiff of a list of accounts comprised solely of minority-owned

complaint and any court proceeding for review of the dismissal of such complaint, such three year limitations period shall be tolled" (emphasis added).  Here, because Plaintiff's charge of discrimination was filed with the state division of human rights, the tolling provisions of the NYCHRL apply.

businesses, and; 6) Defendant's removal of all public sector accounts from Plaintiff's named account list in April 2004.  Hence, the alleged incidents of discrimination and retaliation occurring in January 2001 would ordinarily be time-barred.

To escape the statute of limitations time-bar with regard to the two alleged discriminatory and retaliatory assignments of accounts/territories occurring prior to August 21, 2001, Plaintiff asserts that Danka's allocation of accounts and territories constituted a continuing violation for which Plaintiff may recover under Title VII and the NYCHRL. The continuing violation doctrine provides for a "narrow exception" to the Title VII and NYCHRL limitations period "when an otherwise time-barred claim is part of a 'continuing violation," and at least one discriminatory act falls within the limitations period."  Blake v. Bronx Lebanon Hosp. Ctr., 2003 U.S. Dist. LEXIS 13857, at *5 (S.D.N.Y. 2003); see also Washington v. County of Rockland, 373 F.3d 310, 317 (2d Cir. 2004).  In National Railroad Passenger Corporation v. Morgan, 536 U.S. 101 (2002), the Supreme Court clarified the 'continuing violation' doctrine, ruling that it does not apply to "discrete discriminatory acts … even when they are related to acts alleged in timely filed charges … each discriminatory act starts a new clock for filing charges alleging that act."  Id. at 113-4.  Rather, conduct that has been characterized as a continuing violation is "composed of a series of separate acts that collectively constitute one unlawful employment practice."  Id. at 111.

Here, the repeated removal over a number of years of accounts/territories from Plaintiff's sales list is analogous to the hostile work environment claim addressed in Morgan, and therefore, amounts to a continuing violation under federal law.  See Collins v. Cohen Pontani Lieberman & Pavane, 2008 U.S. Dist. LEXIS 58047 (S.D.N.Y. Jul. 30,

2008) (numerous instances of withheld work assignments over a number of years "collectively constitute[d] one [allegedly] unlawful employment practice" amounting to a continuing violation).[4]   In that regard, Plaintiff alleges that his superiors at Danka first began relieving him of accounts and territories in 2001, and he presents multiple examples from 2001 through 2004 of Danka superiors taking away accounts and territories from him and reassigning them to other salesmen.   Collectively, these acts harmed Plaintiff by leaving him with insufficient territory and accounts, which affected his ability to meet his monthly and yearly sales quota.   Thus, Plaintiff's assignment of accounts and territories claim is "based on the cumulative effect of individual acts," Morgan, 536 U.S. at 115, which "collectively constitute one [allegedly] unlawful employment practice," id. at 117; see also Collins, 2008 U.S. Dist. LEXIS 58047, at *20.

Accordingly, the following claims are timely and are addressed on the merits: 1) that Defendant's allocation of accounts and territories to Plaintiff during the course of his employment was discriminatory, and further, that his assigned accounts and territories were reduced over the course of his employment in retaliation for his internal complaints to Danka management concerning this discrimination, and 2) that Plaintiff's termination

---

[4] In addition to being a continuing violation under federal law, the allocation of accounts/territories is also a continuing violation under the more-permissive NYCHRL.  In the recent decision of Williams v. The New York City Housing Authority, 872 N.Y.S.2d 27, 35-36 (N.Y. App. Div. 1st Dept. 2009), the New York Appellate Division suggested that the NYCHRL is governed by the more permissive pre-Morgan continuing violation standard, which permitted recovery for discriminatory conduct that occurred outside of the applicable limitations period if the conduct was part of a "practice or policy" of discrimination.  Nakis v. Potter, 422 F.Supp.2d 398, 409 (S.D.N.Y. 2006) (citing Fitzgerald v. Henderson, 251 F.3d 345, 359 (2d Cir. 2001)); see also Cornwell v. Robinson, 23 F.3d 694, 704 (2d Cir. 1994) (continuing violation may be found "where…specific ongoing discriminatory policies or practices, or where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice").  Here, as alleged, the repeated removal of accounts and territories from Plaintiff amounted to a practice or policy of discrimination.

by Danka in December 2004 was discriminatory, and that this termination was in retaliation for his discrimination complaint to the EEOC.

## 2.   Plaintiff's Claims of Employment Discrimination

Defendant's motion for summary judgment is denied with respect to Plaintiff's claims of discrimination relating to Defendant's assignment of accounts/territories, and granted with respect to Plaintiff's claim of discrimination relating to his termination.

A. Legal Standard

On a motion for summary judgment, claims of employment discrimination under Title VII, Section 1981, and the New York City Administrative Code are analyzed under the three-step burden-shifting framework articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  See Siddiqi, 572 F. Supp. 2d at 375 (applying McDonnell Douglas to claims brought under Section 1981 and NYC Administrative Code); Forrest v. Jewish Guild for the Blind, 3 N.Y.3d 295, 316-17 (N.Y. 2004) (applying the McDonnell Douglas framework to claims brought under NYC Administrative Code).[5]

A plaintiff must first establish a *prima facie* case of discrimination by introducing evidence that raises a reasonable inference that the action taken by the employer was based on an impermissible factor.  Holcomb v. Iona College, 521 F.3d 130, 138 (2d Cir. 2008).  A plaintiff must show: (1) that he was a member of protected class; (2) that he was qualified for his position; (3) that he suffered adverse employment action; and (4) that the circumstances surrounding the adverse employment action give rise to an inference of discrimination.  Cruz v. Coach Stores, Inc., 202 F.3d 560, 567 (2d Cir. 2000)

---

[5] New York City Human Rights Law claims are analyzed under the same framework as Title VII claims. See Cruz v. Coach Stores, 202 F.3d 560, 565 n. 1 (2d Cir. 2000); Cobb v. Morningside Home, 2009 U.S. Dist. LEXIS 27480, *22 (S.D.N.Y. 2009).

(citing <u>McDonnell Douglas</u>, 411 U.S. at 802).  The burden in establishing a *prima facie* case is "*de minimus*."  <u>Woodman v. WWOR</u>, 411 F.3d 69, 76 (2d. Cir. 2005).

Once a plaintiff establishes a *prima facie* case, a "presumption of discrimination arises and the burden shifts to the defendant to proffer some legitimate, nondiscriminatory reason for the adverse decision or action."  <u>Dawson v. Bumble & Bumble</u>, 398 F.3d 211, 216 (2d Cir. 2005).  If the defendant proffers such a reason, the plaintiff must then show, by a preponderance of the evidence, that the reason proffered by the defendant is pretextual, and that the adverse action was in fact motivated by discrimination.  <u>Id.</u>; <u>See</u> <u>McPherson v. NYC Dep't of Education</u>, 457 F.3d 211, 215 (2d Cir. 2006) ("the ultimate burden rests with the plaintiff to offer evidence sufficient to support a reasonable inference that prohibited … discrimination occurred.").  "The usual evidentiary standards for summary judgment apply at each step of these analyses."  <u>Meiri v. Dacon</u>, 759 F.2d 989, 995 (2d Cir. 1985).

B. <u>Assignment of Accounts/Territories Claim</u>

Plaintiff claims that Danka discriminated against him through its allocation of accounts and territories.  In essence, Plaintiff alleges that by removing the accounts and territories from his portfolio, Defendant effectively deprived him of proper opportunities to earn revenue.  Defendant seeks summary judgment with respect to this claim.  The Court concludes that Plaintiff has submitted sufficient evidence to survive summary judgment with respect to this claim.

It is undisputed that, as an African-American, Plaintiff is a member of a protected class, and it is similarly undisputed that Defendant was qualified to serve first as a Senior

SSR and then as a NAE, the position to which he was promoted in July 2001.[6] Additionally, Plaintiff provides evidence that at numerous points throughout his career at Danka, Plaintiff removed accounts and territory from his pool of potential customers, thereby depriving him of opportunities to achieve his sales quotas and earn commissions.

In that regard, Plaintiff provides evidence that: i) in January 2001 Danka assigned the Health Plus and SUNY Downstate accounts, which were located within Plaintiff's assigned geographic territories, to other salesmen (Mokotoff Aff., Ex. 11 [memo from Danka to Plaintiff]; Pouncy Tr. 131-32, 194; Pirrotta Tr. 112, 118; Pirrotta Dec. ¶¶34, 36); ii) in March/April 2002, Danka split the Brooklyn territory, which had previously been assigned to Plaintiff, into two geographic territories, resulting in the removal of "literally half" of Plaintiff's account base (Pirrotta Tr. 90-92, Pouncy Tr. 143-44, 206, 349; Mokotoff Aff., Ex. 48 [list of accounts]); iii) in April 2002, Danka took away the Dick Bailey print-for-pay account from Plaintiff, assigned the account to another salesman, and contrary to its treatment of white salesmen at the firm, gave Plaintiff nothing to compensate him for his loss of this account (Pirrotta Tr. 132-33, 141-42; Mokotoff Aff., Ex. 53 [Pouncy sales list]; Pouncy Tr. 129; Pirrotta Tr. 97; Pouncy Aff. ¶9); iv) in July 2002, after selling equipment to Premier Home Healthcare, Danka forced Plaintiff to split his received commission with another salesman, Steve Hirsch (Mokotoff Aff., Ex. 16 [letter to Plaintiff]; Pirrotta Tr. 129); v) in December 2003, Danka provided Plaintiff with a list of potential customers comprised entirely of minority owned

---

[6] Danka's sales force consisted of SSRs, an entry-level sales position, and of NAEs, a more senior sales position.  (Pouncy Tr. 63:21-24; Pirrotta Tr. 53:15-18; Pirrotta Dec. ¶8.)  SSRs are assigned zip codes within specific geographic territories to which they can try to sell to prospective Danka customers. (Pirrotta Dec. ¶9.)  NAEs receive a higher base salary and attempt to sell to a named-account list, which consists of specifically denominated sales accounts called "named" accounts.  SSRs have no rights to named accounts within their geographic territory.  (Pirrotta Dec. ¶10.)

businesses (Pouncy Aff. ¶9; Redler Decl. ¶¶6-7), and; vi) in April 2004, Danka removed all public sector accounts from Plaintiff's assigned territory.   (Pouncy Aff. ¶10; Solotaroff Aff., Ex. I [04/19/04 email to Plaintiff].)

The removal of these accounts and territories, which limited Plaintiff's earnings potential, qualifies as an adverse employment action.  See, e.g., Virola v. XO Communs, Inc., 2008 U.S. Dist. LEXIS 30417 (E.D.N.Y. 2008) (removal of accounts constituted adverse employment action); Steele-Hegg v. Computer Associates, 2007 U.S. Dist. LEXIS 49468, *29 (E.D.N.Y. 2007) (same); see also Collins, 2008 U.S. Dist. LEXIS 508047, *30 ("alleged failure to assign Plaintiff adequate work constitutes an adverse employment action"); Dawson, 246 F. Supp. 2d at 322 (S.D.N.Y. 2003) ("[A] material decrease in earning potential may qualify as an adverse employment action");

Lastly, Plaintiff has submitted evidence that Danka's removal of the accounts and territories from Plaintiff's portfolio occurred under circumstances giving rise to an inference of discrimination.  Taylor v. Local 32E Serv. Employees Int'l Union, 286 F. Supp. 2d 246, 253-54 (S.D.N.Y. 2003) ("burden on plaintiff is minimal at this stage").  In that regard, Plaintiff has provided evidence demonstrating that at numerous points when accounts and territories were removed from his portfolio, white salesman were not subject to such actions (see, e.g., Pouncy Decl. ¶9, Pirrotta Tr. 97, Solotaroff Aff., Ex. J [Master Account List]).  See Graham v. Long Island R.R., 230 F .3d 34, 39 (2d Cir. 2000) (evidence that similarly situated white employees were treated differently gives rise to an inference of discrimination).  A reasonable jury could also determine that the provision of a list of minority accounts to an African-American sales manager raises an

inference of discrimination.  Accordingly, Plaintiff has put forth a *prima facie* case of discrimination.

Danka responds that for each instance of alleged discrimination in the allocation of accounts, the assignment of accounts and territories amongst its salespersons was a strategic business decision entrusted to Company management.  Plaintiff however rebuts the legitimate non-discriminatory reasons proffered by Defendant by providing sufficient evidence of pretext to survive summary judgment.  For example, while Danka alleges that the reason Danka reduced Plaintiff's commission after his sale to Premier Home Healthcare in July 2002 was that all New York City agency accounts were assigned to Steve Hirsch, and therefore Hirsch was entitled to some of the received commission (Mokotoff Aff., Ex. 16 [letter to Plaintiff], Pirrotta Tr. 129), Plaintiff has provided evidence of pretext by pointing out that Premiere is not an agency of the City of New York (Solotaroff Aff., Ex. T [YAI webpage]), and also that Dennis Launer, a white NAE, was subsequently assigned to Premiere.  (Solotaroff Aff., Ex. J at 10).  See Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 147 (2000) ("Proof that the defendant's explanation is unworthy of credence is … one form of circumstantial evidence that is probative of intentional discrimination.")

With respect to the removal of the Dick Bailey account from Plaintiff's account list and assignment of this account to Dick Launer, Defendant claims that it was a strategic business decision on its part to create a vertical market for print-for-pay accounts, of which Dick Bailey was one.  (Pirrotta Tr. 79, 96-97).  This may be true, but it does nothing to rebut Plaintiff's allegation that he was not compensated for the removal of the Dick Bailey account and the depletion of his territory, whereas other white NAEs who

had their print-for-pay accounts taken away received Launer's non-print-for-pay accounts in return.

And with regard to the provision of the minority-owned business list to Plaintiff, while Defendant contends that Plaintiff procured this list for himself (Redler Decl. ¶¶6-7), Plaintiff charges that it was Defendant who provided him with the list.  (Pouncy Aff. ¶9.)  It is the role of the jury to balance the evidence and determine who to believe.  <u>See Rule v. Brine</u>, 85 F.3d 1002, 1011 (2d Cir. 1996) ("Any weighing of the evidence is the prerogative of the finder of fact, not an exercise for the court on summary judgment").  Lastly, Defendant claims that the public sector accounts were removed from the lists of all NAEs and assigned to a separate public sector account manager.  (Solotaroff Aff., Ex. I [email].)  However, Plaintiff has provided evidence demonstrating that white NAEs were permitted to retain their public sector accounts.  (<u>Id.</u> at Ex. J.)  The aforementioned examples provide sufficient evidence of pretext to rebut Defendant's legitimate reasons for why certain accounts and territories were transferred from Plaintiff.

Accordingly, because Plaintiff has provided *prima facie* evidence of discrimination in the allocation of territories and accounts, and because the Court concludes that a reasonable jury could find that Danka's proffered reasons for the distribution of the accounts and territories are false, summary judgment on Plaintiff's allocation of accounts and territories claim is denied.  <u>See Zimmermann v. Assocs. First Capital Corp.</u>, 251 F.3d 376, 381 (2d Cir. 2001) (evidence that employer's proffered reasons are false is sufficient to establish pretext).

C. <u>Plaintiff's termination by Danka in December 2004.</u>

Danka terminated Plaintiff's employment on December 20, 2004.  (Redler Decl. ¶21; Mokotoff Aff., Ex. 25 [email to Plaintiff].)  In support of Plaintiff's claim that the circumstances surrounding his termination raised an inference of discrimination, Plaintiff first points to Danka's allegedly discriminatory assignment of accounts/territories.  Yet as explained, the vast majority of the allegedly discriminatory assignments of accounts/territories occurred well over a year prior to Plaintiff's December 2004 termination.  Consequently, these alleged discriminatory acts do not suggest that Plaintiff's termination was connected to them.

Plaintiff also relies upon statements Redler allegedly made to Plaintiff that indicated a "hostility toward African-Americans."  (Pouncy Aff. ¶8.)  Specifically, Plaintiff alleges that Redler told him that he "did not like to go to the minority neighborhoods … because the neighborhoods were dirty and he did not like the people." (Id.)  On a separate occasion, Redler allegedly "expressed his outrage that a white police officer was being prosecuted for shooting an unarmed African-American man."  (Id.) However, Plaintiff's affidavit is barren of any details as to when or where these remarks were made, or how those remarks were connected with Plaintiff's termination.  See Bickerstaff, 196 F.3d at 452 ("Statements [contained in an affidavit] that are devoid of any specifics … are insufficient to defeat a properly supported motion for summary judgment").  Accordingly, Plaintiff has failed to put forth sufficient evidence indicating that the circumstances surrounding his termination evinced an inference of discrimination.

Defendant's motion for summary judgment with respect to discrimination involving Plaintiff's termination is granted.

**3. Plaintiff's Claims of Retaliation**

Plaintiff alleges that after he complained internally of discrimination, Defendant retaliated against him in its allocation of accounts/territories, as described, <u>supra</u>. Plaintiff also alleges that his termination in 2004 by Defendant was in retaliation for his filing of a complaint of discrimination with the EEOC.

A. <u>Legal Standard</u>

Title VII forbids any employer from "discriminating against any of [its] employees … because he has made a charge, testified, assisted, or participated in any manner in a [Title VII] investigation, proceeding, or hearing." 42 U.S.C. Section 2000e-3(a). Retaliation claims are evaluated under a three-step burden-shifting analysis, which follows the <u>McDonnell Douglas</u> framework. <u>Terry v. Ashcroft</u>, 336 F.3d 128, 141 (2d Cir. 2003); <u>Quinn v. Green Tree Credit Corp.</u>, 159 F.3d 759, 768 (2d Cir. 1998). Plaintiff must establish a *prima facie* case of retaliation by showing: 1) participation in a protected activity, <u>i.e.</u>, complaints of an unlawful employment practice; 2) that the defendant knew of the protected activity; 3) an adverse employment action; and 4) a causal connection between the protected activity and the adverse employment action. <u>Jute v. Hamilton Sundstrand Corp.</u>, 420 F.3d 166, 173 (2d Cir. 2005); <u>see also</u> <u>Manoharan v. Columbia University College of Physicians and Surgeons</u>, 842 F.2d 590, 593 (2d Cir. 1987) (to prove that he engaged in protected activity, a plaintiff must demonstrate a "good faith, reasonable belief" that the unlawful employment practice he opposed and brought to the attention of his employer was in violation of Title VII, <u>i.e.</u>, that is was "discriminatory against a particular individual … because of such individual's race, color, religion, sex or natural origin"). In determining whether a plaintiff has met this initial burden in a

retaliation claim, the court's role is to determine only "whether proffered admissible evidence would be sufficient to permit a rational finder of fact to infer a retaliatory motive." Jute, 420 F.3d at 173.

Establishing a *prima facie* case gives rise to a presumption of retaliation, at which point "the onus falls on the employer to articulate a legitimate, non-retaliatory reason for the adverse employment action." Jute, 420 F.3d at 173.  Once the employer offers such a reason, the presumption of retaliation "dissipates," and the plaintiff must show that the proffered given reason is pretextual, and that retaliation was a substantial reason for the adverse employment action." Id. at 173, 180.

B. Plaintiff's Protected Activity[7]

Plaintiff received a $3,000 payment from Defendant in June 2000.  (Mokotoff Aff., Ex. 7.)  Plaintiff alleges that this bonus was given to him after he complained about being treated less favorably than white sales representatives.  (Pouncy Tr. 74-76.)  In April 2001, Plaintiff allegedly again complained to management that black sales representatives were being treated less favorably than white sales representatives. (Pouncy Tr. 71, 74-76.)  As a result of these complaints, Pirrotta allegedly told Plaintiff that if he did not go to a lawyer, Pirrotta would support his promotion to NAE.  (Id.)  In an email dated August 1, 2002, Plaintiff complained that he saw a "double standard" in the way Defendant treated its salespersons  (Solotaroff Aff., Ex. K [email chain]), and in

---

[7] While Plaintiff alleges that he made allegations of discrimination to management throughout his employment at Danka, generalized allegations of complaints of discrimination that lack specifics such as what Plaintiff complained about, to whom he complained, and when he made those complaints, do not constitute protected activity.  See, e.g., Kendricks v. Westhab, Inc., 163 F. Supp. 2d 263, 271 (S.D.N.Y. 2001), adopted by, 2001 U.S. Dist. LEXIS 15572 (S.D.N.Y. 2001), aff'd, 40 Fed. Appx. 619 (2d Cir. 2002) (plaintiff's "retaliation claim is based upon his general protests against Westhab.  However, although Kendricks refers to his protests and his "outspoken ways," he does not specify what he said or when he said it.  Without more, the Court cannot conclude that these statements constituted a protected activity.") Accordingly, the below mentioned complaints are the only evidence of protected activity provided by Plaintiff.

a subsequent email sent to Pirrotta on August 5, 2002, Plaintiff complained about how he received credit for his sales, and he asserted that he felt that he was "being retaliated against because [he] made a complaint about management and how [he is] being treated." (Solotaroff Aff., Ex. H [08/05/02 email].)

The following month, in a September 4, 2002 meeting with Pirrotta and in a five page letter addressed also to Pirrotta (as well as other managers) that Plaintiff wrote on September 19, 2002, Plaintiff complained about his "unfair treatment" with respect to the accounts/territories assigned to him, his salary, and the lack of support from management. (Mokotoff Aff., Ex. 15 [09/19/02 letter from Pouncy to Danka].)  Pirrotta and Danka's Human Resources Department replied to Plaintiff and met with him in October 2002; in those meetings and letters, Defendant denied Plaintiff's complaints of retaliation. (Mokotoff Aff., Exs. 16-18 [memoranda and letters to Pouncy].)  There is no evidence of Plaintiff engaging in further protected activity until May 2004, when he refused to sign his SCAF form on grounds that he was being "set up" for failure due to the depletion of his territories.   (Pirrotta Tr. 155.)

In June 2004 Plaintiff filed a complaint with the EEOC alleging racial discrimination.[8]  He further engaged in protected activity on October 22, 2004, when he wrote an email to Danka's Human Resources representatives concerning his complaint

---

[8] Defendant argues in its brief that the only protected activity here is the 2004 EEOC complaint.  However, it is well-established that informal complaints to management concerning discrimination on a basis prohibited by Title VII are protected activity "so long as [the plaintiff] can establish that he possessed a good faith, reasonable belief that the underlying challenged actions of the employer violated [the] law." Treglia v. Town of Manlius, 313 F.3d 713, 719 (2d Cir. 2002); see also Ibok v. Securities Industry, 2009 U.S. Dist. LEXIS 32534, *23 (S.D.N.Y. 2009) ("when an employees communicates to his or her employer a belief that the employer has engaged in unlawful discrimination, that conduct virtually always constitutes conduct for which the employee is entitled to protection under Title VII").  Accordingly, with regard to Plaintiff's retaliation claim concerning the assignment of accounts/territories, the first three elements of the prima facie case of retaliation -- participation in a protected activity; that the defendant knew of the protected activity, and; an adverse employment action -- are satisfied.

about Danka's sick leave policy (Solotaroff Aff., Ex. R [email chain.]), and on October 28, 2004, when he filed a letter to the EEOC concerning this same sick-leave policy.[9] (Mokotoff Aff., Ex. 43 [letter from Pouncy to EEOC].)

     C. <u>Analysis</u>

     Defendant's motion for summary judgment is granted with respect to Plaintiff's retaliation claim relating to the assignment of accounts/territories.  Defendant's motion for summary judgment relating to Plaintiff's claim that he was terminated in retaliation for his EEOC complaint is denied.

     i. *Plaintiff's Retaliation Claim Regarding the Assignment of Accounts and Territories.*

     Plaintiff's retaliation claim related to the assignment of accounts and territories is dismissed because Plaintiff has failed to show a causal connection between his engagement in protected activity (complaints of discrimination) and the adverse employment actions.  See <u>De Cintio v. Westchester Cty. Med. Ctr.</u>, 821 F.2d 111, 115 (2d Cir. 1987) ("Proof of causal connection can be established indirectly by showing that the protected activity was followed closely by discriminatory treatment or through other evidence such as disparate treatment of fellow employees who engaged in similar

---

[9] While the email and letter concerned complaints about the Company's sick-leave policy, and are not direct complaints about any protected activity, see <u>Cruz v. Coach</u>, 202 F.3d 560, 566 (2d Cir. 2000) ("protected activity refers to action taken to protest or oppose statutorily prohibited discrimination"), in the ensuing email exchange, Plaintiff mentions that he will file the email exchange with the EEOC, and he relates his complaint over sick leave to his complaint about alleged race discrimination.  (Mokotoff Aff., Ex. 43 [letter from Pouncy to EEOC.].)  As such, Plaintiff's informal, internal complaint constitutes protected activity.

conduct, or directly through evidence of retaliatory animus directed at a plaintiff by the defendant.")[10]

Plaintiff first engaged in protected activity in June 2000, and Plaintiff asserts that Danka reacted to this complaint by assigning the Health Plus and SUNY Downstate accounts to other sales representatives in January 2001. This seven-month period of time, however, is insufficient to establish a causal connection, particularly in a situation such as this where Danka could have assigned these two accounts to other sales representatives at any time and would not have needed to wait for any intervening circumstances. See, e.g., Hollander v. Am. Cyanamid Co., 895 F.2d 80, 85-86 (2d Cir. 1990) (Plaintiff did not establish causal connection where three and a half months elapsed between complaint and adverse action); Chamberlin v. Principi, 247 F. Appx. 251, 254 (2d Cir. 2007) (passage of five months was insufficient to establish causal connection between protected activity and adverse action); Sgarlata v. Viacom, 2005 U.S. Dist. LEXIS 4435 (S.D.N.Y. 2005) (no causal connection based on temporal proximity where eight months elapsed between complaint and termination); Ponticelli v. Zurich Am. Ins. Group, 16 F. Supp. 2d 414, 436 (S.D.N.Y. 1998) (time period of two-and-a-half months did not constitute temporal proximity establishing causal connection prong of retaliation claim).

Plaintiff has also failed to provide any evidence of a causal connection between his protected activity and the alleged split of Plaintiff's Brooklyn territory in March/April 2002, the reassignment of Launer's non-print-for-pay accounts in April 2002, and the

---

[10] Plaintiff provides no evidence of disparate treatment of "fellow employees who engaged in similar" protected behavior, nor does Plaintiff provide any evidence of a "retaliatory animus" directed at him by Danka.

provision of the minority-owned business list to Plaintiff in December 2003.  With regard to the March/April 2002 adverse employment actions, the last protected activity alleged by Plaintiff that took place prior to those actions was in April 2001, a year before Plaintiff's Brooklyn territory was reduced and Launer's non-print-for-pay accounts were distributed to other NAEs.  The last protected activity that occurred prior to the provision of the minority-owned business list in December 2003 took place in October 2002.  This lengthy time period between the protected activity and the adverse employment actions is insufficient to establish a causal nexus.  See, e.g., Castro v. Local 1199, 964 F. Supp. 719, 728 (S.D.N.Y. 1997) (year between protected activity and adverse employment action is too long for causal connection); Zenni v. Hard Rock Café, 903 F. Supp. 644, 656 (S.D.N.Y. 1995) (same).

Lastly, Danka reduced the commission Plaintiff received from his sale to Premiere in July 2002, more than fifteen months after Plaintiff's April 2001 protected activity and prior to Plaintiff's August 2002 protected activity.  Also, Danka removed the public sector accounts from Plaintiff's account list in April 2004, a year and a half after Plaintiff's last protected activity in October 2002.  Once again, the significant period of time between the protected activity and the adverse employment actions does not support an inference of causation.  See, e.g., Burkybile v. Bd. of Educ. of Hastings-On-Hudson, 411 F.3d 306, 314 (2d Cir. 2005) (finding that no causal connection was established where over a year passed between the protected activity and the adverse action); Morris v. Lindau, 196 F.3d 102, 113 (2d Cir. 1999) (holding that "since two years had elapsed" between the protected activity and the adverse action, "no inference of causation is

justified").  Simply put, based on these circumstances, no rational fact finder could infer a retaliatory motive from these adverse employment actions.

Accordingly, as Plaintiff has failed to show causation, his claims of retaliation based on Defendant's assignment of accounts and territories stemming from his earlier discrimination complaints are dismissed.

### ii. Danka's termination of Plaintiff in December 2004.

Plaintiff has put forth a *prima facie* case of retaliation with regard to his termination in December 2004.  First, Plaintiff engaged in protected activity in June 2004 (filing of the EEOC complaint) and October 2004 (internal complaints of discrimination).  Next, Defendant admits that it knew of the initial EEOC Complaint (Def. 56.1 ¶¶144-146), and because the October 2004 e-mail exchange occurred internally with management, Defendant knew of this protected activity as well.

Plaintiff has also established a causal connection between the protected activity and his termination (an adverse employment action).   A mere two months separated Plaintiff's protected activity and his termination, which is a period of sufficient temporal proximity to satisfy the causal connection element of his *prima facie* case.  See Lovejoy-Wilson v. NOCO Motor Fuel, 263 F.3d 208, 224 (2d Cir. 2001) (two-month gap between filing complaint with management and adverse employment action provided inference of causation); Ashok v. Barnhart, 289 F.Supp.2d 305, 315 (E.D.N.Y. 2003) ("A period of only two months between a protected activity and an adverse action may permit a reasonable jury to find the acts to be temporally proximate and causally related"); Bandhan v. Lab. Corp. of Am., 234 F.Supp.2d 313, 319-20 (S.D.N.Y. 2002) (same).  In

light of these facts, Plaintiff has met his burden of demonstrating a *prima facie* case of retaliation.

Defendant puts forth a number of legitimate and nondiscriminatory reasons for Plaintiff's termination: 1) Plaintiff's underperformance in sales and his unprofessional behavior; 2) his documented insubordination and failure to follow company policies; and 3) his refusal to follow directions to report to work on December 20, 2004 in lieu of taking a vacation day.  (Pirrotta Tr. 147-48; Mokotoff Aff., Ex. 25 [12/20/04 email to Plaintiff].)  Specifically, Danka contends that Plaintiff's "violation of express orders, as well as the numerous incident reports issued against [him] are legitimate reasons for termination."

Defendant also provides evidence of Plaintiff's long-standing record at Danka, as measured by sales that were consistently below his quarterly and annual quotas, and written managerial notifications to this effect every year of his employment.[11]  This proof is sufficient to demonstrate a nondiscriminatory reason for Plaintiff's termination.  See Betz v. Sloan Memorial, 1996 U.S. Dist. LEXIS 10568 (S.D.N.Y. 1996) (poor job performance and violation of an employer's rules and express orders are legitimate and non-retaliatory reasons for taking adverse employment action against an employee); see also Rikhy v. AMC Computer Corp., 2003 U.S. Dist. LEXIS 4804 (S.D.N.Y. 2003) ("insubordination and threatening behavior both constitute legitimate nondiscriminatory reasons for discharge").

---

[11] The memoranda range from Letters of Concern in 2000; a Performance Improvement Plan in 2001; Pirrotta's October 9, 2002 letter to Plaintiff; and another Letter of Concern in 2003.  (Mokotoff Aff., Exs. 5, 6, 9, 18, 19 [Danka memos to Pouncy].)  Further, Plaintiff does not deny that he received disciplinary warnings dated September 10, 2002, April 12, 2004, June 30, 2004 and October 25, 2004.  (Mokotoff Aff., Exs. 13, 20, 22, 23 [Danka memos and letters to Pouncy].)

However, Plaintiff has offered sufficient evidence to establish pretext.  In his affidavit, Plaintiff states that he experienced "retaliatory animus" after he complained to the EEOC: Danka Human Resources staff monitored his meetings with his supervisors and instructed fellow employees not to speak with him about certain matters.  (Pouncy Aff. ¶12.)  But most importantly, while Defendant asserts that it made a decision to fire Plaintiff after he failed to show for work in late December 2004 (Def. 56.1 ¶¶133-143), an internal Danka email evinces that Plaintiff was selected for termination as of October 29, 2004, approximately one week after Plaintiff's sick-leave dispute erupted, and long before his alleged December insubordination.  (Solotaroff Aff., Ex. N [email from Danka].)  Further, there is some evidence that Plaintiff's vacation day had been pre-approved by management.  (Mokotoff Ex. 27 [vacation request form].)  The aforementioned evidence sufficiently establishes pretext for the purposes of this motion for summary judgment.

Plaintiff's claim that Defendant terminated him in retaliation for his filing of an EEOC claim may proceed to trial or settlement.

**4. Defendant has Moved to Dismiss Plaintiff's NYCHRL Claims**

The New York City Administrative Code limits the applicability of the NYCHRL to acts occurring within the boundaries of New York City.  See N.Y. Gen. Mun. Law 239-s (1999); N.Y.C. Admin. Code. 2-201 (2003).  To state a claim under the NYCHRL, therefore, a plaintiff must allege that the defendant intentionally discriminated against him within New York City.  Casper v. Lieberbaum & Co., 1998 U.S. Dist. LEXIS 4063 (S.D.N.Y. 1998).  Defendant argues that Plaintiff's claims of discrimination and retaliation under the NYCHRL must be dismissed as a matter of law because he has not

satisfied the jurisdictional prerequisite to setting forth such a claim, i.e., he cannot establish that Defendant's acts of discrimination or retaliation occurred within the boundaries of New York City.

In determining whether the discriminatory act or acts occurred within the City of New York, courts look at "'the location of the *impact* of the offensive conduct.'" Germano v. Cornell Univ., 2005 U.S. Dist. LEXIS 17759, at *13 (S.D.N.Y. Aug. 17, 2005) (quoting Salvatore v. KLM Royal Dutch Airlines, 1999 U.S. Dist. LEXIS 15551, at *50 (S.D.N.Y. 1999)); Pearce v. Manhattan Ensemble Theatre, 528 F. Supp. 2d 175, 184 (S.D.N.Y. 2007).  These courts have focused on whether the Plaintiff felt impact from the discriminatory remarks or acts in New York City.[12]  See Germano, 2005 U.S. Dist. LEXIS 17759, at *13.

Here, the crux of Plaintiff's claim is that Defendant gradually reduced his account base, which consisted of accounts located almost exclusively in New York City.[13] (Pouncy Aff. ¶¶1-2.)  Plaintiff therefore has provided sufficient *prima facie* evidence to show that the impact of Danka's allegedly discriminatory acts was felt within New York City.  Accordingly, Defendant's argument that Plaintiff's claims under the NYCHRL should be dismissed is denied.

---

[12] At oral argument, Defendant argued that Plaintiff has not satisfied the jurisdictional prerequisite for the NYCHRL under the two-prong test pronounced in Pearce, 528 F. Supp. 2d at 184, which requires that the discriminatory act or acts took place in New York City *and* that the impact of the act was felt within New York City.  However, the test adduced in Pearce applies only to plaintiffs who are not residents of New York City.  See id. at 184.  Plaintiff is a New York City resident (Pouncy Tr. at 11), and therefore, Pearce is inapplicable here.

[13] Plaintiff avers that the only accounts that he was assigned that were not located in New York City were the accounts that were on the minority owned business list that was assigned to him.  (Pouncy Aff. ¶5.)  Further, the accounts/territories that Plaintiff claims were removed from him as part of Danka's discrimination and retaliation -- Health Plus, SUNY Downstate, Dick Launer, half of Brooklyn, and his public sector accounts -- were all located in New York City.

## 5. Conclusion

For the reasons stated herein, Defendant's motion for summary judgment is GRANTED in part and DENIED in part. Plaintiff's discrimination claim relating to the assignment of accounts and territories and his retaliation claim related to his termination may proceed to trial or settlement. All other claims are dismissed.


IT IS SO ORDERED.

Dated: New York, New York
      May 18, 2009

Robert P. Patterson, Jr.
U.S.D.J.


Copies of this Opinion and Order faxed to:

Attorney for Plaintiff
Jason L. Solotaroff
Giskan, Solotaroff & Anderson, LLP
11 Broadway, Suite 2150
New York, New York 10004
Fax: 646 520 3235

Attorneys for Defendant
Jeffery D. Mokotoff
Elana Gilaad
Ford and Harrison LLP
100 Park Avenue, Suite 2500
New York, NY 10017
Fax: 212 453 5959